UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CATHERINE CABOTAGE,**

    **Plaintiff,**

    v.

    Civil Action 2:11-cv-50
    Judge George C. Smith
    Magistrate Judge Elizabeth P. Deavers

**OHIO HOSPITAL FOR
PSYCHIATRY, LLC.** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

Plaintiff, Catherine Cabotage, brings this employment action against Defendants, Ohio Hospital for Psychiatry, LLC ("OHP") and Behavioral Centers of America, LLC ("BCA"), arising from Defendants' termination of her employment. She alleges violations of the False Claims Act, 31 U.S.C. § 3729 *et seq*.; the Ohio's Nurses Whistleblower Act, Ohio Rev. Code § 4723.33; and Ohio's public policy. This matter is before the Court for consideration of OHP's Motion for Return of Confidential Patient Information (ECF No. 13), Plaintiff's Memorandum in Opposition (ECF No. 14), and OHP's Reply (ECF No. 16). For the reasons that follow, OHP's Motion is **DENIED**.

**I.**

BCA employed Plaintiff as a full-time registered nurse at OHP from November 2009 to March 2010. According to Plaintiff, during her employment at OHP, she became concerned that the Medical Director was engaged in fraudulent and illegal activities. Plaintiff's concerns prompted her to gather evidence to support her suspicions. For example, she began recording her observations of the Medical Director's activities on forms that listed patients' names, ages,

and room numbers.  Plaintiff eventually removed these documents, along with the Director's patient notes, from OHP and took them to her home.  She subsequently provided copies of these removed documents to an investigator from the Department of Health and Human Services.  The investigator ultimately concluded that the agency would not pursue a claim against OHP for misconduct.  Plaintiff also disclosed the documents to her attorney.

OHP terminated Plaintiff on March 8, 2010, for "fraternizing with patients' families outside of work" in violation of OHP's confidentiality policies.  (Compl. ¶¶ 44–45, 52–54, ECF No. 2.)  OHP maintains that Plaintiff improperly contacted a patient's family member from an off-premises location without authorization and wrongfully removed patient-identifying protected health information to make the phone call.  As a result of her termination, Plaintiff brought claims against OHP and BCA under the False Claims Act, 31 U.S.C. § 3729 *et seq.*; and the Ohio's Nurses Whistleblower Act, O.R.C. § 4723.33.

OHP learned through discovery requests that Plaintiff possessed OHP documents containing protected health information.  OHP requested that Plaintiff return of the confidential documents on November 3, 2011, and renewed that request on December 19, 2011.  Plaintiff did not return the documents to OHP.  Plaintiff's refusal to return the documents prompted OHP to file the subject Motion for Return of Confidential Patient Information. (ECF No. 13.)  OHP seeks a Court order directing Plaintiff to return the confidential documents she took during the course of her employment at OHP.

In support of its Motion, OHP contends that the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") requires it to seek the return of the documents at issue because those documents contain confidential, protected health information of OHP patients who have no interest in the instant case.  OHP maintains that Plaintiff has no legitimate reason to

continue to retain the documents at issue given that she is no longer investigating claims against OHP relating to its professional or clinical standards of care.

Plaintiff does not dispute that she is no longer investigating her suspicions concerning OHP's potential violation of professional or clinical standards. She nevertheless posits that HIPAA's Whistleblower Provision, 45 C.F.R. § 164.502(j), authorizes her to retain possession of the documents. She asserts that she "needs to retain possession of these documents" so that she may utilize them in the instant action. (Pl.'s Mem. in Opp. 6–7, ECF No. 14.) By way of example, Plaintiff indicates the documents at issue will assist her in establishing a *prima facie* case of retaliation and also in rebutting the testimony of one of OHP's witnesses. She asks the Court to deny OHP's Motion. Alternatively, she suggests that the Court take possession of the documents, permitting her to utilize them, if necessary, to prove an element of her retaliation claim or to rebut testimony.

## II.

The Court must deny OHP's Motion because it lacks authority to award OHP the relief it requests. Neither party directly addresses this issue. Instead, the parties focus their briefing on whether or not Plaintiff's removal and continued retention of the documents at issue runs afoul of HIPAA, apparently assuming that the Act confers jurisdiction upon this Court to remedy violations private parties bring to its attention. It does not. On this point, *Kissenger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980), is instructive.

In *Kissenger*, journalists filed a request under the Freedom of Information Act ("FOIA") to obtain records that Mr. Kissenger had removed from the Department of State ("Department") to the Library of Congress ("Library") in violation of the Federal Records Act ("FRA") and the Federal Records Disposal Act ("FRDA"). 445 U.S. at 142–47. Because "FOIA did not directly

provide for relief since the records were in the custody of the Library of Congress, which is not an 'agency' under the Act," the journalists requested an order directing the Library to return the records to the Department (an "agency" under FOIA) and directing the Department to then process their FOIA disclosure requests. *Id*. at 145. Upon concluding that Mr. Kissenger's removal of the records violated the FRA and FRDA, the district court "invoke[d] its equitable powers 'to order the return of wrongfully removed agency documents where a statutory retrieval action appears unlikely.'" *Id*. The United States Court of Appeals for the Fourth Circuit affirmed the trial court's order to return the records without discussion. *Id*. at 145–45. The Supreme Court of the United States reversed the Court of Appeals' order compelling return of the records, concluding that the court lacked authority to order the return. *Id*. at 146–150, 158. In analyzing whether the lower court possessed authority, the Court assumed *arguendo* that Mr. Kissinger's removal of the documents violated the FRA and FRDA. *Id*. at 148. The Court then proceeded to consider whether or not the trial court possessed authority to enforce and remedy violations of the FRA and FRDA. *Id*. The Court explained that in "seeking the return of the records to State Department custody," the journalists were "effectively seek[ing] to enforce the[] requirements of the Acts." *Id*. The Court concluded that the trial court lacked authority because the FRA and FRDA established that only the Attorney General could bring suit to recover the records that had been wrongfully removed. *Id*. In reaching this conclusion, the Court emphasized that the FRA and FRDA do not confer a private right of action on private parties:

> Congress expressly recognized the need for devising adequate statutory safeguards against the unauthorized removal of agency records, and opted in favor of a system of administrative standards and enforcement. Thus, regardless of whether Kissinger has violated the Records and Records Disposal Acts, Congress has not vested federal courts with jurisdiction to adjudicate that question upon suit by a private party. That responsibility is vested in the administrative authorities.

4

*Id*. at 149–50 (internal citations and footnotes omitted).

Applying *Kissinger* to the instant case, the Court concludes HIPAA does not vest this Court with jurisdiction to impose the remedy OHP seeks. OHP, in seeking return of the documents at issue, is "effectively seeking to enforce" HIPAA.[1] *Id*. at 148. Like the federal acts at issue in *Kissinger*, HIPAA creates neither an express nor an implied cause of action for private citizens to enforce its terms. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (finding that it lacked federal subject matter jurisdiction over plaintiff's claims alleging violations of HIPAA because HIPAA confers no private cause of action); *accord Siegler v. Ohio State University*, No. 2:11–cv–170, 2011 WL 1990570, at *8 (S.D. Ohio May 23, 2011); *Henry v. Ohio Victims of Crime Compensation Program*, No. 2:07–cv–0052, 2007 WL 682427, at *2 (S.D. Ohio Feb. 28, 2007). Rather, HIPAA expressly limits enforcement of the statute to the Secretary of Health and Human Services. *Acara*, 470 F.3d at 571 (citing 42 U.S.C.§§ 1320d-5, d-6); *Sneed v. Pan American Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). Thus, to the extent Plaintiff's continued possession of the documents at issue violates HIPAA, the Secretary of Health and Human

---

[1] Clearly, OHP is not seeking relief pursuant to Federal Rule of Civil Procedure 65. OHP seeks permanent, not interim relief. In addition, OHP did not advance *any* counterclaims against Plaintiff, let alone claims upon which this Court could ultimately award injunctive relief. *See Westbank Yellow Pages v. BRI, Inc.,* No. 96–cv–1128, 1996 WL 255912, at *1-2 (E.D. La. May 13, 1996) (citation omitted) (denying the defendants' request for injunctive relief where the defendants had not filed any counterclaims, explaining that "[a] preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not even sought in the underlying action"); *Cf. De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is . . . appropriate to grant intermediate relief of the same character as that which may be granted finally," but is inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit."); *Ball v. Famiglio*, 396 F. App'x 836, 838 (3d Cir. 2010) (denying preliminary injunction where individuals whose conduct movant sought to enjoin were not named defendants); *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (declining to award injunctive relief where the relief sought was not of the same character that could be granted finally); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (same).

Services, not this Court, is the only party authorized to enforce the Act.[2]

This Court does, however, possess the inherent authority to issue an order addressing Plaintiff's expressed intention to utilize the documents at issue in this case, especially in light of the fact that she obtained these documents outside of this Court's discovery process. *See e.g.*, *C.P. Armour Pharm. Co.*, 838 F.Supp. 1573, 1578 (S.D. Fla. 1993) (exercising its inherent authority "to limit the use of documents obtained by means other than that court's discovery process"); *In re Shell Oil Refinery*, 143 F.R.D. 105, 108–09 (E.D. La. 1992) (limiting party's use of documents obtained outside of the court's discovery process "pursuant to the Court's inherent authority to control and preserve the integrity of its judicial proceedings"); *United States v. Comco Mngmt.*, No. SACV 08-0668, 2009 WL 4609595, at *4–5 (C.D. Cal. Dec. 1, 2009) (ordering Government to return all of the defendants' privileged documents it had obtained from a whistleblower pursuant to the court's "inherent authority to grant defendants appropriate relief to remedy the Government's circumvention of the normal discovery process").

Pursuant to this inherent authority, the Court **PRECLUDES** Plaintiff from utilizing any of the documents that she removed from OHP in connection with her investigation of OHP's potential violation of professional or clinical standards in the instant action. The Court concludes that this exercise of inherent authority is warranted given the sensitive and possibly privileged nature of these documents and their limited relevance to the instant action. *Cf. Kapp v. Jewish Hospital, Inc.*, No. 1:09–cv–949, 2011 WL 2669457, at *5–6 (S.D. Ohio July 7, 2011) (finding "non-party patients' right to confidentiality outweighs the [p]laintiff's proffered justification for accessing non-party patient medical records" and that the plaintiff has "other,

---

[2]To be clear, the Court is not opining on whether HIPAA's Whistleblower Exception authorized Plaintiff's initial removal or continued retention of the documents at issue.

less invasive options to discover whether similarly-situated nurses administered drugs without an order . . . and were not terminated."); *Hofmann v. Aspen Dental Management, Inc.*, No. 3:10–cv–37–SEB–WGH, 2011 WL 4625920, at *7 (S.D. Ind. Sept. 29, 2011) (concluding that the issue of whether the plaintiff was in fact a whistleblower under HIPAA as largely irrelevant to resolving her retaliation claim because "the relevant question is not whether [the plaintiff's] conduct actually violated HIPAA, but merely whether, at the time [the defendant] terminated her, [it] *honestly believed* that her conduct violated HIPAA."). To the extent Plaintiff believes that these documents are discoverable within this action, she may seek them through this Court's discovery process such that OHP would have an opportunity to seek a protective order.

### III.

For the reasons set forth above, OHP's Motion for Return of Confidential Patient Information is **DENIED**. (ECF No. 13.) Plaintiff, however, is **PRECLUDED** from utilizing any of the documents that she removed from OHP in connection with her investigation of OHP's potential violation of professional or clinical standards in the instant action.

**IT IS SO ORDERED.**

Date: July 27, 2012                             /s/ *Elizabeth A. Preston Deavers*
                                                                Elizabeth A. Preston Deavers
                                                                United States Magistrate Judge